[Civ. No. 4218.   Fourth Dist.   July 19, 1951.]

JOSEPH HOLLOWAY et al., Appellants, v. SAN DIEGO FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent.

Hillyer & Hillyer for Appellants.

Wright, Thomas, Dorman & Fox for Respondent.

MUSSELL, J.—Plaintiffs appeal from a judgment in favor of defendant in an action brought to recover damages alleged to have been occasioned by the failure of defendant to properly disburse funds in accordance with a loan agreement between the parties and by the failure of the building contractor employed by plaintiffs to complete his contract for the agreed price.

Plaintiffs secured a loan from defendant in the sum of $10,500 for use in remodeling their home in San Diego. The loan agreement, executed March 3, 1948, provided in part as follows:

"(4) The Association shall have the right to use any money in its possession payable to the borrower to pay any valid claim or claims for labor performed and/or materials furnished for any improvements upon or to the security hereunder or any part thereof. . . .

"(6) I hereby authorize the Association to make all payments on this loan as the construction work progresses, as

follows: 15% when and after the foundation is in and sub-floor is laid; 20% when framework and sides of building are under roof and roughed in; 20% when and after the plastering work is finished; 20% when and after a valid Notice of Completion of the buildings has been recorded in the office of the County Recorder of San Diego County; 21% or, THE BALANCE, less all charges and expenses in connection with the loan; thirty-five (35) days after the date of recording in the Recorder's office of the valid Notice of Completion, and when release is furnished by General Contractor. It is further understood that said Association will disburse funds under its control only in proportion to its inspector's report of progress.

"(7) The undersigned has accepted and hereby accepts the sold responsibility for the selection of his own contractor or contractors and the Association assumes no responsibility for the completion of said building or buildings according to the plans and specifications and for the contract price; . . . ."

In April, 1948, plaintiffs entered into a written contract with one J. O. Harrell, a building contractor, wherein Harrell agreed to do the remodeling involved for the sum of $11,388 and the work was commenced on or about the 13th of April. In the latter part of that month or the first part of May, Harrell informed a representative of defendant that he was having "a little difficulty in his bills" and was "going to try to work it out." Harrell was then informed that the association would thenceforth pay the bills "direct" and Harrell would receive no money except to pay for labor bills. All disbursements were then made by defendant from the loan funds in accordance with the quoted section 4 of the loan agreement.

Notice of completion was filed September 10, 1948, at which time the loan account contained only the sum of $219.67. Liens of $2,454.02 were filed against plaintiffs' property after the notice of completion. These liens were paid by the plaintiffs and this action was filed to recover the amounts so paid as damages.

Plaintiffs' first argument is, in effect, that the defendant knowingly misrepresented the credit of the proposed contractor and that in reliance thereon, plaintiffs paid certain moneys to the defendant and executed a note and trust deed for $10,500, which funds were to be used to satisfy an existing encumbrance on the property and for construction; that progress payments were to be made as set forth in paragraph 6

of the loan agreement; that defendant failed to disburse the funds in accordance therewith and plaintiffs were thereby compelled to pay the liens.

The trial court found that the defendant had not made the misrepresentations alleged and that defendant had disbursed the funds in accordance with its agreement with the plaintiff.

The contention that defendant knowingly misrepresented the credit of contractor Harrell finds no support in the evidence. While there was testimony that defendant's representatives informed plaintiffs that Harrell did good work and that all of the association's dealings with him had been satisfactory, such statements were supported by the record and did not amount to misrepresentations of fact.

Plaintiff Joseph Holloway testified that he was informed by Mr. Clark, vice-president and appraiser for defendant, that a contractor's performance bond was not necessary because Harrell had done several jobs for the association and it had no complaint about him. However, Mr. Clark testified that he discussed the matter with Mr. Holloway and informed him that he would have to use his own judgment about securing a performance bond; that such a bond would be an extra cost and that the decision about it would have to be his.

Plaintiffs employed an architect to prepare plans and specifications for the remodeling before discussing the proposed loan with the defendant and at the original meeting with the defendant, plaintiff Joseph Holloway was advised to get a contractor and secure a bid for the proposed work. Plaintiffs then obtained a bid based upon labor, material and a fixed fee, which was approximately $3,000 more than the bid subsequently obtained from contractor Harrell. The first bid was rejected and a contract was executed with Harrell.

Plaintiff Joseph Holloway testified that Mr. Clark recommended to him that Harrell be asked to submit a bid for the work. This testimony was contradicted by Mr. Clark, who stated that he did not recommend Mr. Harrell as a contractor to build or to do the remodeling work. The record is not clear as to when Holloway first met Harrell, but it appears that following Harrell's submission of the bid, plaintiffs made inquiries of the architect employed by them to prepare plans and specifications for the proposed remodeling and of another builder as to Harrell's qualifications. The architect so employed advised plaintiffs to secure a contractor's performance bond and the record shows that the specifications called for the bid to include the cost of such a bond and stated that the owner was to determine whether it would be required.

Plaintiffs failed to allege or prove that they failed to secure a performance bond because of their reliance upon the alleged misrepresentations of the defendant. The defendant was neither a contractor nor a surety company. Under their own specifications plaintiffs had the duty to determine whether a bond would be required and if so, to pay the premium. In addition, the loan agreement specifically provides that the borrower accepts the sole responsibility for the selection of his own contractor and that the defendant assumes no responsibility for the completion of the job for the contract price.

Plaintiffs argue that the defendant association was under a duty to disburse the funds held by it under the provisions of section 6 of the loan agreement and that if such a procedure had been followed, no damage to plaintiffs would have resulted.

The record shows that shortly after the work commenced it became apparent to defendant that the contractor was having difficulty meeting his financial obligations. The association then determined to proceed with disbursements as provided in section 4 of the agreement by paying the labor and material bills "direct"; thus applying such funds to the payment of bills for labor performed and materials actually furnished in the construction. In this connection, it should be noted that defendant's inspector testified that he made from 18 to 20 trips to the job in order to be assured that the payments to be made under paragraph 4 of the loan agreement were actually for labor and materials that had gone into the job. The method of disbursal used by defendant afforded more protection for plaintiffs than they would have received if progress payments had been made direct to the contractor. Plaintiffs' architect testified that the ultimate cost to plaintiffs for the work was reasonable. He also testified that the job was well done, the materials were of good standard quality and that he was satisfied with the manner and method in which the work was done.

Judgment affirmed.

Barnard, P. J., concurred.